UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| v. | Case No.: 1:22-cr-306-CLM-GMB |
| **J.T. TOOMBS, III,**<br>  Defendant. | |

# ORDER

After holding a suppression hearing, the magistrate judge entered a report, recommending that the court deny Defendant JT Toombs, III's motion to suppress. (Doc. 45). Toombs timely objects to the report and recommendation. (Doc. 47). For the reasons stated within, the court **WILL OVERRULE** Toombs' objections and **DENY** the motion to suppress (doc. 21).

—

Toombs is charged with one count of conspiracy to possess fentanyl with the intent to distribute and one count of possession of fentanyl with intent to distribute. In his motion to suppress, Toombs asserts that the Government found evidence supporting these charges through an illegal search of his vehicle. The magistrate judge recommends that the court deny Toombs' motion to suppress for two reasons. First, Officer Josh Powers did not violate Toombs' Fourth Amendment rights by accessing license plate reader data from the Department of Justice's Drug Enforcement Administration System Information License ("DEASIL"). Second, Powers had reasonable suspicion of criminal activity when he extended Toombs' traffic stop. The court will address each recommendation in turn.

### A.  Use of DEASIL System

Toombs objects to the magistrate judge's finding that Powers' use of the DEASIL system didn't violate Toombs' Fourth Amendment rights, arguing that he had a reasonable expectation of privacy in that information under *Carpenter v. United States*, 138 S. Ct. 2206 (2018). In *Carpenter*, the court held

that there was a reasonable expectation of privacy in cell-site records that catalogue a person's "every moment of every day for five years." *See id.* at 2219–20. So the court determined that the Government will usually need a warrant to access this information. *Id.* at 2222–23.

The court agrees with the magistrate judge that "Powers' use of the DEASIL system is a far cry from the 24-hour surveillance issue in *Carpenter*." (Doc. 45 at 14). As the magistrate judge points out, Toombs hasn't cited any case in which a court has held that officers must obtain a search warrant before searching a license plate reader database. And in several cases, even some post-*Carpenter*, courts have held that using automated license plate readers doesn't violate the Fourth Amendment. As the magistrate judge reasoned, the use of the DEASIL system is more like the use of the radio transmitter discussed in *United States v. Knotts*, 460 U.S. 276 (1983), or search for a car's VIN addressed in *New York v. Class*, 475 U.S. 106 (1986), than the use of cell-site records in *Carpenter*. In fact, in a pre-*Carpenter* case, the Eleventh Circuit looked to *Knotts* and *Class* and determined that the capture of an image of a license plate by tag reader technology didn't violate the Fourth Amendment. *See United States v. Wilcox*, 415 F. App'x 990, 992 (11th Cir. 2011) ("The district court did not commit plain error in concluding that [the defendant] did not have a reasonable expectation of privacy in the plainly visible license plate and that the officers' use of the tag reader in this case did not violate the Fourth Amendment.").

Toombs says that use of the DEASIL system differs from use of the radio transmitter (or beeper) in *Knotts* in three ways. First, Toombs points out that the information obtained from the beeper in *Knotts* wasn't the only information used to secure a search warrant. As explained below, the DEASIL data wasn't the only information that gave Powers reasonable suspicion of Toombs and his co-defendant, Hill. Indeed, the magistrate judge found that even if the court ignored the DEASIL data, the remaining facts Powers knew would have aroused reasonable suspicion. (*See* Doc. 45 at 27 n.12). So the court overrules this objection.

Toombs next says that unlike with the beeper technology in *Knotts*, law enforcement's visual surveillance of Toombs' vehicle wouldn't have yielded the same facts as those provided by the DEASIL data. Toombs contends "it would

be impossible for law enforcement to observe, memorize, record, and track every single vehicle's license plate number that passes on the highway." (Doc. 47 at 4). So Toombs contends the DEASIL data is more intrusive than the technology discussed in *Knotts*.

As Toombs notes, the Court in *Knotts* "was careful to distinguish between the rudimentary tracking facilitated by the beeper and more sweeping modes of surveillance." *Carpenter*, 138 S. Ct. at 2215. But the "more sweeping modes of surveillance" discussed in *Knotts* was "twenty-four hour surveillance of any citizen of this country." *Id.* The license plate reader simply "provide[s] a snapshot of the suspect's location at a discrete time while traveling in an automobile on a public road." (Doc. 45 at 14). It is not like the 24-hour surveillance cautioned against in *Carpenter* and *Knotts*. Plus, the court in *Carpenter* explained that its holding did not "call into question conventional surveillance techniques and tools, such as security cameras." *Carpenter*, 138 S.Ct. at 2220. And security cameras placed on a highway overpass would presumably also be able to record and track every single license plate number that passed it on the highway. The court overrules this objection.

Toombs finally objects to the magistrate judge's finding that the DEASIL data doesn't track a suspect's movement over a long time. It's Toombs' position that this technology tracks "the movement of an individual in significant detail and over unknown periods of time." (Doc. 47 at 5). Toombs has pointed to no evidence that supports this assertion. Indeed, Toombs doesn't challenge the magistrate judge's finding that "Powers testified that the DEASIL database reflected a reading on I-20 eastbound earlier that day. If his query yielded other results, Powers did not testify about them and the record does not otherwise establish them." (Doc. 45 at 14 n.5). This single reading from earlier in the same day that Powers queried the DEASIL database is much different from the 12,898 location points from records spanning 127 days that the Government obtained in *Carpenter*. *See United States v. Yang*, 958 F.3d 851, 864 (9th Cir. 2020) (Bea, J., concurring) ("It would be folly to hold that searches of [license plate reader] databases require a warrant without identifying even one case whether the whole of one's physical movements was implicated in [a license plate reader] database search." (cleaned up)).

3

* * *

In sum, after reviewing Toombs' objections, the court sees no error in the magistrate judge's recommendation that the court find that the DEASIL database search didn't violate Toombs' Fourth Amendment rights. As the magistrate judge found, even after *Carpenter*, Toombs lacked a reasonable expectation of privacy in the information stored in the DEASIL system.

### B.   Prolonged Stop

Toombs next objects to the magistrate judge's finding that Powers had developed reasonable suspicion before engaging in activities unrelated to the traffic stop or unrelated safety concerns. Having reviewed the magistrate judge's report, Toombs' objections, and the relevant caselaw, the court overrules this objection. Because the magistrate judge presided over the suppression hearing, the court will defer to his finding that Powers credibly explained why Hill and Toombs' behavior "signaled a particularized and objective basis for suspecting legal wrongdoing." (Doc. 45 at 24 (quotations omitted)). And the court agrees with the magistrate judge that Powers had reasonable suspicion based on Hill's driving behavior, Toombs' decision to ride in the backseat of his own car, information from the DEASIL data that cast doubt on Hill's explanation for the length of the trip to Atlanta, and other circumstances related to the traffic stop.

Toombs says that the magistrate judge erred in finding that Toombs' explanation for the visit to Atlanta contradicted Hill's explanation for the visit. As the magistrate judge noted, Hill told Powers that he and Toombs had gone to Atlanta for a meeting related to the Magic City Classic. But Toombs simply stated that they were "just visiting" Atlanta. The court sees no error in the magistrate judge's finding that these explanations were contradictory. And because they were contradictory, these explanations support a finding of reasonable suspicion. But even if the court didn't consider Hill and Toombs' explanations for the Atlanta trip, the totality of the circumstances would still establish that Powers had reasonable suspicion of criminal activity before he extended the traffic stop. In short, Powers had reasonable suspicion of criminal activity before he extended the stop by asking Hill questions about Toombs.

4

—

In summary, having reviewed de novo the entire record, including the magistrate judge's report and Toombs' objections, the court **OVERRULES** Toombs' objections, **ADOPTS** the magistrate judge's report, **ACCEPTS** the recommendation, and **DENIES** Toombs' motion to suppress (doc. 21).

**Done** and **Ordered** on May 3, 2023.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE